## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAWN YOUNT,

      Plaintiff,

v.

BUTLER COUNTY,
PENNSYLVANIA,

      Defendant.

Case No. __2:21-cv-1063__

JURY TRIAL DEMANDED

## COMPLAINT

NOW COMES Plaintiff, Shawn Yount, by and through his attorney, Prabhu Narahari, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1.    Plaintiff brings this Complaint to recover damages under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Pennsylvania Human Relations Act of 1955 ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*, and the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et. seq.* Plaintiff alleges that he was discriminated against on the basis of his disability and unlawfully retaliated against as a result of his request to take protected leave during a bout of extreme work-related stress. The alleged discrimination culminated with Plaintiff's constructive discharge, as he alleges in detail below.

1

## II. Jurisdiction and Venue

2.       This action arises under the ADA and the FMLA, both of which are federal laws. Therefore, this Court has jurisdiction over Plaintiff's discrimination and retaliation claims pursuant to 28 U.S.C. § 1331.

3.       This Court has supplemental jurisdiction over Plaintiff's Pennsylvania state law claim pursuant to 28 U.S.C. § 1367(a).

4.       Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania. The venue is proper pursuant to 28 U.S.C. § 1391(b).

5.       Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding his allegations under the ADA on January 29, 2021, under charge number 533-2021-00712. *See* Exhibit 1.

6.       Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on May 14, 2021. This Complaint has been filed within ninety days of the Plaintiff's receipt, thus making this action timely. *See* Exhibit 2.

## III. Parties

7.       Plaintiff, Shawn Yount ("Plaintiff"), is an adult individual with a primary residence located at 1408 N Main Street Extension, Butler, PA 16001.

8.       Defendant, Butler County, Pennsylvania ("Defendant") is a Pennsylvania county government with a regular place of business located at 124 West Diamond Street, Butler, Pennsylvania 16001.

2

## IV. Facts

9.     Plaintiff began working for Defendant as a probation officer for the Butler County Office of Adult Probation in August 2009. In this role, Plaintiff was responsible for field supervision of formerly incarcerated individuals.

10.    Plaintiff received high rankings on job-related tests and performance reviews, and he was an extremely productive member of the department. Throughout his tenure, he worked with the Butler County Drug Task Force, and he was well liked by the Adult Probation staff, the county detectives, and other members of local law enforcement.

11.    In March 2020, members of the Office of Adult Probation were informed that several officers would be laid off indefinitely due to the Covid-19 pandemic. Plaintiff, as a result, took a voluntary furlough from his position with Defendant.

12.    In late April 2020, the furloughed probation officers were called back into work in different waves. Upon his return to work, Plaintiff was informed about a change to the structure of the department. Under the new guidelines, officers were no longer permitted to work with their regular partners; rather, a new schedule was created which matched each officer with varying partners on different days.

13.    On several occasions, Plaintiff was scheduled to work with individual employees of the department with whom he was not comfortable working alongside. For example, he was assigned to work with one individual who forfeited his right to carry a firearm and another partner who had received absolutely no training, including the mandatory basic training.

14.    Plaintiff was reasonably concerned for his safety.

15.    He addressed his concerns with his supervisors, offering to work by himself, to go into the field with local police, and to use his personal vehicle. Members of Defendant's were

3

dismissive of these issues, and Plaintiff's concerns were not addressed. He continued to request changes to the rotating schedule, but Defendant's management was unwavering.

16.     Notably, Plaintiff has long dealt with anxiety. He noticed that the stress of the new rotating partner schedule exacerbated his condition, and, in June 2020, he sought additional mental health treatment. The care that he received under licensed professional counselor, Jackie McKee, was largely related to workplace stress and the fact that Plaintiff was asked to work in a manner which he felt was unsafe for himself and others. *See* Exhibit 3.

17.     Because he continued to experience serious work-related stress, Plaintiff reached out to Chief County Probation Officer Doug Ritson to express his frustration and his desire to potentially resign. As a result, Mr. Ritson suggested that Plaintiff consider taking medical leave to get a break from the high stress of the job. Specifically, Mr. Ritson stated to Plaintiff: "you may want to consider using more of your sick time." *See* Exhibit 4.

18.     In response to Mr. Ritson's instruction, Plaintiff reached out to his physician, Dr. Michael Trotta, for further treatment related to his increased anxiety. During his evaluation, Dr. Trotta stated that Plaintiff should take time off of work to adjust to new anxiety medication and to cope with his underlying stress.

19.     Plaintiff then filled out the appropriate FMLA paper work, and he presented all of the information to the Butler County Department of Human Resources.

20.     Plaintiff was subsequently approved by the U.S. Department of Labor to take protected leave under FMLA. *See* Exhibit 5.

21.     Plaintiff then informed Mr. Ritson that he would be taking thirty days of FMLA leave, per his suggestion. Surprisingly, Mr. Ritson demanded to know the reason for Plaintiff's medical leave, despite their prior conversation regarding Plaintiff's prospective medical leave.

22.     Mr. Ritson accosted Plaintiff in his office and accused him of taking medical leave in order to work at a side business that he owned. This accusation was categorically untrue.

23.     After the interaction, Plaintiff took a thirty-day leave under the FMLA. Soon after his leave began, Plaintiff learned that Butler County officials called his doctor's office to dispute the signature of the Dr. Trotta on his FMLA paperwork and to question staff members of the office regarding Plaintiff's private medical history. Specifically, Lori Altman, the director of Defendant's Human Resources Department, asked a member of Dr. Trotta's staff "if [they] were aware that the patient was working his other job." The office refused to disclose additional, confidential medical information to Ms. Altman, but confirmed the signature of Dr. Trotta on Plaintiff's FMLA paperwork. *See* Exhibit 6.

24.     County officials then requested that Plaintiff participate in an independent medical examination ("IME"), which was scheduled to take place in a conference room at a hotel located in Upper St. Clair, Pennsylvania, which is approximately fifty miles from Defendant's headquarters. *See* Exhibit 7.

25.     Plaintiff was uncomfortable with notion of driving approximately fifty miles to meet a physician in a hotel conference room. Additionally, he had already received approval from Dr. Trotta to take leave, as well as authorization to use FMLA from the U.S. Department of Labor. As a result, Plaintiff declined to attend the IME.

26.     In a further effort to harass Plaintiff during his leave, court administrator, Candice Graff, contacted him and told him that he was abusing sick leave. She said that they would discuss the future of his employment upon his return. This caused Plaintiff great anxiety – the very reason for his use of protected leave.

27.     After taking with his wife, doctor, and therapist, Plaintiff decided to resign amid the persistent harassment that he faced.

28.     In June 2020, Plaintiff requested to use his vacation time through July 2020 and to resign at the conclusion of that time. Defendant refused and sent Plaintiff a notice that he was terminated as of July 1, 2020.

29.     Plaintiff turned in all of his equipment and was never compensated for his vacation time.

**COUNT I**
**Disability Discrimination in Violation of the ADA**

30.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

31.     In order to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show:

    a.   "He is a disabled person within the meaning of the ADA;

    b.   He is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer;

    c.   He has suffered an otherwise adverse employment decision as a result of the discrimination." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

32.     The inquiry into whether a person is disabled under the ADA is made on a case-by-case analysis. *Tice v. Centre Area Transport Authority*, 247 F.3d 506 (3rd Cir. 2001).

33.     The term "disability" is defined under the ADA as:

    a.   "A physical or mental impairment that substantially limits one or more major life activities of such individual;

    b.   A record of such an impairment; or

6

    c.   Being regarded as having such an impairment." 29 C.F.R. § 1630.2(g).

34.    Here, Plaintiff was disabled under the meaning of the ADA as a result of his diagnosis of anxiety, a mental ailment which substantially limited his ability to cope with stress. As Plaintiff's anxiety increased, he was debilitated to the point that he required time off from work in order to cope with his stress and to adjust to new anxiety medication. As such, his ability to work, a major life function, was impacted as a result of his disability.

35.    Plaintiff was otherwise qualified to perform his position with Defendant, as he was an efficient member of the department, he had no employment-related infractions, and he was well likely by staff members and fellow law enforcement officials.

36.    The Third Circuit has established a "reasonable person" standard when it comes to evaluating the concept of an adverse employment action. *Bearley v. Friendly Ice Cream Corp.*, 322 F. Supp. 2d 563, 577 (M.D. Pa. 2004).

37.    As such, Plaintiff suffered adverse employment action related to his disability on several occasions, including:

    a.   Upon Plaintiff's submission of FMLA paperwork, Mr. Ritson demanded to know the reason for Plaintiff's medical leave, despite their prior conversation regarding the prospective medical leave, and Mr. Ritson's encouragement of Plaintiff to use his sick leave.

    b.   Additionally, while submitting FMLA paperwork, Mr. Ritson accosted Plaintiff in his office and falsely accused him of taking medical leave in order to work at a side business that he owned.

c.  Defendant's officials contacted the office of Dr. Trotta to dispute his signature on Plaintiff's FMLA paperwork and to question staff members of the office regarding Plaintiff's private medical history.

d.  Defendant's officials requested that Plaintiff participate in IME in a conference room at a hotel located approximately fifty miles from Defendant's headquarters, despite the fact that Plaintiff already received approval from Dr. Trotta to take leave, as well as authorization to use FMLA from the U.S. Department of Labor.

e.  Defendant's court administrator, Candice Graff, contacted Plaintiff while he was on protected leave and accused him of was abusing sick leave, all the while calling into question his ability to return to work.

38.    As a result of the adverse employment action to which he was subjected, Plaintiff was constructively discharged from his position.

39.    Notably, a constructive discharge occurs when employment conditions are permitted to be "so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (citing *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 173 (3d Cir.1988)).

40.    In light of the aforementioned instances of adverse employment actions, including Defendant's demand that Plaintiff travel fifty miles to a hotel for an IME and the violative act of contacting his personal physician in an attempt to glean confidential medical information, it is clear that a reasonable person would feel compelled to resign from his position.

41.    The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT II
### Disability Discrimination in Violation of the PHRA

42.    The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

43.    The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142 n.5 (3d Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002).

44.    Because Plaintiff is able to state a viable claim of disability discrimination under the ADA, so too will he be able under the PHRA.

45.    As stated above, Plaintiff was disabled under the meaning of the ADA as a result of his diagnosis of anxiety, a mental ailment which substantially limited his ability to cope with stress. As Plaintiff's anxiety increased, he was debilitated to the point that he required time off from work in order to cope with his stress and to adjust to new anxiety medication. As such, his ability to work, a major life function, was impacted as a result of his disability.

46.    Plaintiff was otherwise qualified to perform his position with Defendant, as he was an efficient member of the department, he had no employment-related infractions, and he was well likely by staff members and fellow law enforcement officials.

47.    Plaintiff suffered adverse employment action related to his disability on several occasions, including:

   a.    Upon Plaintiff's submission of FMLA paperwork, Mr. Ritson demanded to know the reason for Plaintiff's medical leave, despite their prior conversation regarding

the prospective medical leave, and Mr. Ritson's encouragement of Plaintiff to use his sick leave.

b.  Additionally, while submitting FMLA paperwork, Mr. Ritson accosted Plaintiff in his office and falsely accused him of taking medical leave in order to work at a side business that he owned.

c.  Defendant's officials contacted the office of Dr. Trotta to dispute his signature on Plaintiff's FMLA paperwork and to question staff members of the office regarding Plaintiff's private medical history.

d.  Defendant's officials requested that Plaintiff participate in IME in a conference room at a hotel located approximately fifty miles from Defendant's headquarters, despite the fact that Plaintiff already received approval from Dr. Trotta to take leave, as well as authorization to use FMLA from the U.S. Department of Labor.

e.  Defendant's court administrator, Candice Graff, contacted Plaintiff while he was on protected leave and accused him of was abusing sick leave, all the while calling into question his ability to return to work.

48.  As a result of the adverse employment action to which he was subjected, Plaintiff was constructively discharged from his position, as it is clear that a reasonable person would feel compelled to resign from his position. This constructive discharge constituted adverse employment action taken by Defendant against Plaintiff.

49.  The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT III
### Retaliation in violation of the FMLA

50.    The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

51.    In order to establish a *prima facie* case of retaliation in violation of the FMLA, a plaintiff must show:

    a.    He "invoked [his] right to FMLA-qualifying leave;

    b.    [H]e suffered an adverse employment decision; and

    c.    [T]he adverse action was causally related to [his] invocation of rights." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012).

52.    Courts view such retaliations claims "through the lens of employment discrimination law," and, as a result, subject claims to the *McDonnell Douglas Corp. v. Green* burden-shifting framework. *Id.*

53.    Here, Plaintiff invoked his right to FMLA-qualifying leave by discussing his prospective leave with Mr. Ritson, by filing out and submitting the appropriate paperwork, and by officially petitioning for protected leave.

54.    Plaintiff suffered adverse employment action related to his disability on several occasions, including:

    a.    Upon Plaintiff's submission of FMLA paperwork, Mr. Ritson demanded to know the reason for Plaintiff's medical leave, despite their prior conversation regarding the prospective medical leave, and Mr. Ritson's encouragement of Plaintiff to use his sick leave.

    b.  Additionally, while submitting FMLA paperwork, Mr. Ritson accosted Plaintiff in his office and falsely accused him of taking medical leave in order to work at a side business that he owned.

    c.  Defendant's officials contacted the office of Dr. Trotta to dispute his signature on Plaintiff's FMLA paperwork and to question staff members of the office regarding Plaintiff's private medical history.

    d.  Defendant's officials requested that Plaintiff participate in IME in a conference room at a hotel located approximately fifty miles from Defendant's headquarters, despite the fact that Plaintiff already received approval from Dr. Trotta to take leave, as well as authorization to use FMLA from the U.S. Department of Labor.

    e.  Defendant's court administrator, Candice Graff, contacted Plaintiff while he was on protected leave and accused him of was abusing sick leave, all the while calling into question his ability to return to work.

55.    All of the instances of adverse employment action which led to Plaintiff's constructive discharge related to both his disability and his invocation of rights under the FMLA. As such, he is able to establish a causal connection between his seeking of protected leave under the FMLA and the resulting adverse employment actions to which Plaintiff was subjected.

56.    The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor, and against the Defendant, and award all damages available at law and equity, including:

a) Lost back pay resulting from Defendant's constructive discharge of Plaintiff;

b) Lost front pay continuing into the future for Defendant's unlawful conduct;

c) Compensatory damages, including emotional damages and humiliation;

d) Punitive damages to punish Defendant's conduct and to deter similar future conduct;

e) Costs for bringing this action;

f) Attorneys' fees;

g) Pre-judgment and continuing interest; and

h) Any other relief that this Court deems necessary and proper.

Respectfully Submitted,

/s/ Prabhu Narahari
Prabhu Narahari, Esq.
PA ID: 323895
**Manes & Narahari LLC**
Law & Finance Building
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
(412) 626-5588 Direct
(412) 650-4845 Fax
pn@manesnarahari.com

## VERIFICATION

I, Shawn Yount, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_____
Shawn Yount

14